C.K. Lee, *to be admitted pro hac vice*
Email: cklee@leelitigation.com
**LEE LITIGATION GROUP, PLLC**
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181

Ted. K. Lippincott (SBN: 283704)
Email: tlippincott@levineblit.com
**LEVINE & BLIT LLP**
6300 Wilshire Blvd, Ste 1870
Los Angeles, CA 90048
Tel.: (310) 281-0100
Fax: (310) 281-0140

*Attorney for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| DERRICK REAVES, *on behalf of himself and all others similarly situated*<br><br>Plaintiff,<br><br>v.<br><br>KETORO, INC. d/b/a ORO LOS ANGELES<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff DERRICK REAVES, individually and on behalf of all other persons similarly situated, by and through his undersigned attorneys, pursuant to this Class Action Complaint against KETORO, INC. d/b/a ORO LOS ANGELES, alleges the following:

## NATURE OF THE ACTION

1. This action is brought by Plaintiff REAVES on behalf of himself and all persons in the United States who have received unsolicited and unconsented-to commercial text messages to their mobile phones from KETORO, INC. d/b/a ORO LOS ANGELES (herein "Defendant" or "ORO LA") in violation of the Telephone Consumer Protection Act. 47 U.S.C. § 227 et seq.

## JURISDICTION AND VENUE

2. The Court has federal question jurisdiction over this action under 28 U.S.C. § 1331 because this action arises out of a violation of federal law—47 U.S.C. § 227(b). *See Mims v. Arrow Fin. Serv*., LLC 132 S. Ct. 740 (2012).

3. Venue is proper in this District under 28 U.S.C § 1391 because Defendant's principal place of business is in this District.

## PARTIES

*Plaintiff*

4. Plaintiff REAVES is a citizen of the state of New York and a resident of Queens County.

*Defendant*

5. Defendant KETORO, INC. d/b/a ORO LOS ANGELES is an online clothing retailer that operates under the name "ORO Los Angeles." It is incorporated in California and has its principal place of business at 21062 Brookhurst Street, Suite 205, Huntington Beach, CA 92646. Its agent for service of process is Andrew R. Gale, located at 1820 W. Orangewood Ave, Suite 104, Orange, CA 92868.

## FACTUAL ALLEGATIONS

**The Telephone Consumer Protection Act**

6. The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*., was enacted by Congress in 1991 and is implemented by the Federal Communications

Commission ("FCC").  In its June 18, 2015 Declaratory Ruling and Order ("2015 TCPA Order"), the FCC explained the original purposes of the TCPA:

> As its very name makes clear, the Telephone Consumer Protection Act is a broad "consumer protection" statute that addresses the telemarketing practices not just of bad actors attempting to perpetrate frauds, but also of "legitimate businesses" employing calling practices that consumers find objectionable… The TCPA makes it unlawful for any business— "legitimate" or not—to make robocalls that do not comply with the provisions of the statute. While the Commission has traditionally sought to "reasonably accommodate[] individuals' rights to privacy as well as the legitimate business interests of telemarketers,"…, we have not viewed "legitimate" businesses as somehow exempt from the statute, nor do we do so today.

2015 TCPA Order ¶ 2 n.6.

7. The 2015 TCPA Order also explained the continuing relevance of the TCPA, especially in connection with wireless consumers:

> Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the Commission. The Telephone Consumer Protection Act (TCPA) and our rules empower consumers to decide which robocalls and text messages they receive, with heightened protection to wireless consumers, for whom robocalls can be costly and particularly intrusive… With this Declaratory Ruling and Order, we act to preserve consumers' rights to stop unwanted robocalls, including both voice calls and texts, and thus respond to the many who have let us, other federal agencies, and states know about their frustration with robocalls.

2015 TCPA Order ¶ 1.

8. The TCPA makes it "unlawful for any person… to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice… to any telephone number assigned to a paging service, cellular telephone service… or any service for which the called party is charged for the call…" 47 U.S.C. §

227(b)(1)(A)(iii).

9. "Prior express content" requires

> an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

47 C.F.R. § 64.1200(f)(8).

10. In addition, the written agreement must include a clear and conspicuous disclosure informing the signer that:

> By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice;

§ 64.1200(f)(8)(i)(A).

and

> The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

§ 64.1200(f)(8)(i)(B).

11. The 2015 TCPA Order reaffirmed the FCC's longstanding position that text messages qualify as "calls" under the TCPA. ¶107.

12. Additionally, the 2015 TCPA Order confirmed that text messages which originate from the Internet fall within the ambit of the TCPA's prohibitions. The text and legislative history of the TCPA revealed "Congress's intent to give the Commission broad authority to enforce the protections from unwanted robocalls as new technologies emerge." ¶ 113.

**Defendant Violated the TCPA**

13. At 12:56 PM on November 20, 2018, Plaintiff REAVES received a marketing text from Defendant through its 961-67 short code, attempted to opt-out by texting "Stop" as per the instructions on the text, and then received a confirmation text from Defendant affirming that he had unsubscribed and would not be receiving any further messages. Below are reproductions of this activity:



14. Despite opting out and being informed that he would receive no further texts, Plaintiff REAVES received another marketing text from Defendant the next day, November 21, 2018, at 1:22 PM:

> Get early access! 30% OFF everything! Use code "30" at https://fpu.sh/aW18.. Offer Expires SOON :) Stop https://fpu.sh/aW19

15. So, the next day, November 22, 2018, Plaintiff REAVES once again attempted to opt-out, texting "Stop" as per the instructions, at 12:39 AM and was again told that he had been unsubscribed and would be receiving no further messages:

> Stop

> You have successfully unsubscribed and will receive no more messages.

16. Defendant's confirmation text proved to be wrong yet again. Less than two hours later that same day, at 1:52 PM, Defendant once again texted Plaintiff REAVES will the following message:

> Black Friday Sale NOW LIVE ORO Los Angeles Offer Ends Tomorrow! 30% Off Entire Order.. Use code "30" at https://fpu.sh/bNHv . Stop https://fpu.sh/bNHw

17. Plaintiff REAVES then received another similar message the next day, November 23, 2018, at 6:58 PM:

> ORO Los Angeles Black Friday Sale! Save 30% OFF - Use code "BFCM" at https://fpu.sh/gA5p. OFFER ENDING SOON! Stop https://fpu.sh/gA5q

18. Plaintiff REAVES did not give Defendant prior express written consent to send him these marketing texts. Even if he had provided such consent for the text of November 20, 2018, his "Stop" text that day revoked it, such that all subsequent texts were unconsented-to and in violation of the TCPA.

19. Defendant texted Plaintiff REAVES through an automated telephone dialing system ("ATDS" or "autodialer"). This is confirmed in Defendant's online check-out page, which requests permission to send autodialed texts to consumers:

> Phone
>
> ☑ Receive support and offers via text message*
>
> ‹ Return to cart                    CONTINUE TO SHIPPING METHOD
>
> *By checking this box I consent to receive automated marketing by text message from ORO Los Angeles through an automatic telephone dialing system at the number provided. Consent is not a condition to purchase. View privacy policy.

20. Defendant's use of an ATDS is further corroborated by the generic, impersonal nature of the text and the use of an SMS short code. Courts have held that such characteristics are probative of autodialing technology. *See Kazemi v. Payless Shoesource, Inc.*, No. C 09-5142 MHP, 2010 U.S. Dist. LEXIS 27666, at *6-7 (N.D. Cal. Mar. 12, 2010) ("plaintiff's description of the received messages as being formatted in SMS short code licensed to defendants, scripted in an impersonal manner and sent en masse supports a reasonable inference that the text messages were sent using an ATDS"); *Abbas v. Selling Source, LLC*, No. 09 CV 3413, 2009 U.S. Dist. LEXIS 116697, at *12 (N.D. Ill. Dec. 14, 2009) ("the text of the SMS message Abbas allegedly received clearly suggests that it is from an institutional sender without any personalization"); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) ("The messages were

advertisements written in an impersonal manner."); *Soular v. N. Tier Energy LP*, No. 15-CV-556 (SRN/LIB), 2015 U.S. Dist. LEXIS 112294, at *8 (D. Minn. Aug. 25, 2015) ("there are additional facts alleged in the Complaint which indicate the use of an ATDS, such as the generic content of the message").

21. Even if Defendant's technology required some level of human involvement to operate, this does not remove it from the definition of an ATDS. *See Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018) ("We also reject Crunch's argument that a device cannot qualify as an ATDS unless it is fully automatic, meaning that it must operate without any human intervention whatsoever. By referring to the relevant device as an "*automatic* telephone *dialing* system," Congress made clear that it was targeting equipment that could engage in automatic *dialing*, rather than equipment that operated without any human oversight or control.").

22. Defendant sent similar unsolicited marketing texts using an automated telephone dialing system to many other similarly situated persons, who likewise never consented to receiving them or withdrew their consent.

23. The messages were disruptive and diminished the Plaintiff's and the Class's usage and enjoyment of their mobile phones. Courts throughout the country have affirmed that such non-financial injuries allegations suffice to create standing under the TCPA. *See Mejia v Time Warner Cable, Inc.*, 2017 US Dist LEXIS 120445 [SDNY Aug. 1, 2017, No. 15-CV-6445 (JPO)].) Plaintiff REAVES has a concrete injury sufficient to confer Article III standing. *See Van Patten v Vertical Fitness Group, LLC*, 847 F.3d 1037 (9th Cir. 2017) ("Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA need not allege any additional harm beyond the one Congress has identified.") (internal quotes and citation omitted); *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-2440 (VEC), 2017 U.S. Dist. LEXIS 146343 (S.D.N.Y. Sep. 8, 2017).

## CLASS ACTION ALLEGATIONS

24. Plaintiff REAVES seeks to represent a class consisting of:
All persons in the United States who, beginning four years prior to the filing of this action, received unsolicited text messages to their cellular phones from Defendant's automated telephone dialing system, without providing Defendant with their prior express consent (the "Class").

25. The proposed Class excludes current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which it has or has had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

26. Plaintiff reserves the right to revise the Class definition based on facts learned in the course of litigating this matter.

27. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of members of the proposed Class is unknown to Plaintiff at this time and can only be ascertained through the appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Class. Other members of the Class may be identified from records maintained by Defendant or by their own record of text messages. These members may be notified of the pendency of this action by mail, or by advertisement, using the form of notice customarily used in class actions such as this.

28. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendant's wrongful conduct.

29. Plaintiff will fairly and adequately protect the interests of the members of the Class because Plaintiff has no interests antagonistic to those of the other members of the Class. Plaintiff has retained experienced and competent counsel.

30. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages sustained by individual members of the proposed Class may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the Class to individually seek redress for the wrongful conduct alleged herein. If Class treatment of these claims was not available, Defendant would likely be able to persist in its unlawful conduct with impunity.

31. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the common questions of law and fact to the Class are:

   i. whether Defendant sent unsolicited marketing text messages to cellular phones belonging to Plaintiff and the Class;
   ii. whether Defendant used an automated telephone dialing system to do so;
   iii. whether text recipients provided their prior express consent;
   iv. if text recipients did provide their prior express consent, whether Defendant continued texting them after they opted out of receiving further texts;
   v. whether Defendant's conduct was intentional or negligent; and
   vi. whether Plaintiff and the Class are entitled to damages for Defendant's conduct.

32. The membership of the Class is readily ascertainable from electronic records.

33. The prosecution of this action as a Class action will reduce the possibility of repetitious litigation. Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a Class action.

34. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are too small to make it economically feasible for an individual class member to

prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein.

35. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

36. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

37. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain members of the proposed Class are not parties to such actions.

38. Defendant's conduct is generally applicable to the Class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION
## COUNT I
**VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT**
**(47 U.S.C. § 227 *et seq*.)**

39. Plaintiff REAVES realleges and incorporates herein by reference the allegations contained in all preceding paragraphs and further alleges as follows:

40. Plaintiff REAVES brings this claim individually and on behalf of the other members of the Class for Defendant's violations of the TCPA.

41. Defendant directly or vicariously violated the TCPA when it used an automated telephone dialing system to send unsolicited and unauthorized marketing texts to the cellular phones of Plaintiff and the Class.

42. The TCPA, 47 U.S.C. § 227(b)(3) provides:

> **(3)** Private right of action. A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State--
>
> **(A)** an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>
> **(B)** an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>
> **(C)** both such actions.

43. Additionally, the TCPA provides that the court may, at its discretion, treble the statutory damages if it finds that Defendant's violation was willful or knowing. 47 U.S.C. § 227(b)(3).

44. Defendant's violations of the TCPA were willful and knowing. But it is liable to Plaintiff and the Class even if they were only negligent.

45. Defendant should also be enjoined from engaging in similar unlawful conduct in the future.

46. Accordingly, Plaintiff and the Class are entitled to all damages referenced herein, attorney's fees, costs, treble damages, injunctive relief, and any other remedies allowed by the TCPA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for relief and judgment against Defendant as follows:

(A)  For an Order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent members of the Class;

(B)  For an Order declaring that Defendant's conduct violates the TCPA;

(C)  For an Order finding in favor of Plaintiff and members of the Class;

(D)  For statutory or treble damages for each violation of the TCPA, as determined by the evidence presented at trial;

(E)  For prejudgment interest on all amounts awarded;

(G)  For an Order enjoining Defendant from further violations of the TCPA;

(H)  For an Order awarding Plaintiff and members of the Class their reasonable attorney's fees and expenses and costs of suit; and

(I)  For such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.

DATED: July 23, 2019

Respectfully submitted,

By: */s/ C.K. Lee*
C.K. Lee, Esq.

*/s/ Ted K. Lippincott*
Ted K. Lippincott, Esq.